FILED 12 OCT '22 15:34USDC-ORP

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | 3:22-cr-00360-MO |
| v. | INDICTMENT |
| JAMIE MCGOWEN, | 18 U.S.C. §§ 1343, 1344, 1957 and Forfeiture Allegations |
| Defendant. | <u>UNDER SEAL</u> |

**THE GRAND JURY CHARGES:**

<u>INTRODUCTORY ALLEGATIONS</u>

At all times relevant to this indictment:

1.  **JAMIE MCGOWEN ("MCGOWEN")**, defendant herein, was the 100% owner and registered agent of Salem Outsourcing, Inc., ("SOI"). Between August 2016 and December 2018, **MCGOWEN**, through SOI, was responsible for calculating the payroll and employment taxes for Al's Trailer Sales of Salem Inc. (Al's Trailer").

2.  In November 2019, **MCGOWEN** purchased Al's Trailer and became the 100% owner and registered agent of Al's Trailer. Al's Trailer's registered address was 4843 Portland Road Northeast, Salem, Oregon.

3. **MCGOWEN** was the 100% owner of Reality RV and Trailers Inc ("Reality RV"). Reality RV's registered address was 4843 Portland Road Northeast, Salem, Oregon.

4. **MCGOWEN** was the 100% owner of Valley Investment Company dba Casey's Restaurant Inc. ("Valley Investment"). Valley Investment's registered address was 3180 West Sahara Ave. C-16, Las Vegas, Nevada.

5. **MCGOWEN** was the 50% owner of Reality Auto. Reality Auto's registered address was 201 NE Polk Station Road, Dallas, Oregon.

## COVID Disaster-Relief Loans

6. The Economic Injury Disaster Loan ("EIDL") program was a Small Business Administration ("SBA") program that provides low-interest financing to small businesses, renters, and homeowners affected by declared disasters.

7. On March 27, 2020, President Trump signed the Coronavirus Aid, Relief, and Economic Security (CARES) Act into law. That statute, along with the Coronavirus Preparedness and Response Supplemental Appropriations Act, authorized the SBA to provide EIDLs of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic. In addition, the CARES Act authorized the SBA to issue advances of up to $10,000 to small businesses within three days of applying for an EIDL. The amount of any advance was determined by the number of employees on the borrower's payroll. The advances did not have to be repaid.

8. The CARES Act also created the Paycheck Protection Program ("PPP"), which authorized the SBA to guarantee loans of up to $10,000,000 to qualifying employers without collateral or personal guarantees from the borrowers. The Act required lenders making loans under the PPP to defer all repayment obligations for not less than six months on such loans and

**Indictment**  **Page 2**

required borrowers to certify, among other things, that the borrowed "funds [would] be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments."

9. On March 11, 2021, President Joseph Biden signed the American Rescue Plan Act, which established the Restaurant Revitalization Fund ("RRF") and appropriated $28.6 billion to the SBA for the purpose of making grants under that program. The SBA was authorized to award RRF grants of up to $5,000,000 per location (not to exceed $10,000,000 total for the Application and any affiliated businesses) to restaurants, bars, and similar ventures to help offset revenue losses resulting from the COVID-19 pandemic and related mitigation measures. Grant funds expended for authorized purposes before March 11, 2023, did not need to be repaid.

10. In order to obtain an EIDL, PPP, or RRF funds, an applicant was required to provide information about the subject business's operations, such as the date of opening, number of employees, and past revenues. The applicant was also required to certify that all the information in the application was true and correct to the best of the applicant's knowledge.

11. Applications for EIDLs and EIDL advances were submitted to the SBA over the Internet, using cloud-based platforms hosted on computer servers in several states. Before July 11, 2020, applications bearing numbers that began with the digits 33 were routed to servers in the State of Iowa. Beginning on July 11, 2020, all EIDL applications, regardless of number, were routed to servers in the State of Iowa.

12. PPP loan applications were submitted over the Internet to participating lenders via the SBA's computer servers. PPP loan applications submitted after January 11, 2021, were routed through servers located in the State of Oregon.

**Indictment** **Page 3**

13.     SBA transmitted PPP lender processing fees to the lender from Sterling, Virginia.

14.     Applications for RRF grants were submitted through servers in the State of Oregon, which forwarded information from approved applications to the servers in the Commonwealth of Virginia.

**COUNT 1**
**(Wire Fraud)**
**(18 U.S.C. § 1343)**

15.     The allegations in paragraph 1 are incorporated as though realleged herein.

16.     Beginning in or about August 2016 and continuing until in or about December 2018, in the District of Oregon, defendant **MCGOWEN** knowingly and intentionally devised and intended to devise a scheme and artifice to defraud as to material matters and to obtain money and property by means of materially false and fraudulent pretenses, representations, promises, and omissions of material facts.

**THE SCHEME**

17.     **MCGOWEN**, on behalf of SOI, agreed to process Al's Trailer's payroll and calculate taxes.

18.     At the end of each of Al's Trailer's pay periods, **MCGOWEN** would provide Al's Trailer's with SOI paystubs detailing income withholding and payroll tax withholding for each employees' paycheck.  **MCGOWEN** would also submit a billing request for payment of the gross employee payroll and for payment for SOI's services.

19.     Upon receipt of payment from Al's Trailer's for gross employee payroll, **MCGOWEN** withheld income and payroll taxes from Al's Trailer's employees.

20.     **MCGOWEN** paid Al's Trailer's employees in two ways.  First, **MCGOWEN** paid Al's Trailer's employees via checks from SOI bank accounts at Bank of America and Key

**Indictment**                                                                                                                                                                  **Page 4**

Bank. SOI's Bank of America and Key Bank accounts are both located in Oregon and were almost solely used to process Al's Trailer's payroll. Second, **MCGOWEN** paid Al's Trailer's employees via direct deposit transfers through Intuit Payroll. For the direct deposit payments, **MCGOWEN** transferred funds from SOI's Bank of America or Key Bank accounts in Oregon to Intuit Payroll's JPMC Chase account in Texas. Intuit Payroll would then direct deposit the funds to Al's Trailer's employees' bank accounts.

21.     Although **MCGOWEN** withheld income and payroll taxes from Al's Trailer's employees, **MCGOWEN** never paid over any federal income withholding or payroll taxes to the Internal Revenue Service ("IRS") and instead used those funds for personal expenditures.

22.     In 2016, **MCGOWEN** improperly retained approximately $92,028 of federal income withholding and payroll taxes from Al's Trailer.

23.     In 2017, **MCGOWEN** improperly retained approximately $328,739 of federal income withholding and payroll taxes from Al's Trailer.

24.     In 2018, **MCGOWEN** improperly retained approximately $284,846 of federal income withholding and payroll taxes from Al's Trailer.

## WIRE FRAUD

25.     On or about November 2, 2017, defendant **JAMIE MCGOWEN**, in the district of Oregon and elsewhere, for purposes of attempting to execute and executing the above-described material scheme to defraud knowingly caused an interstate wire communication from Oregon to Texas, to wit, a transfer of $55,303.34 from SOI's Key Bank account in Oregon ending in 5414 to Intuit Payroll's JMPC Chase account in Texas ending in 6653.

/ / /

/ / /

## COUNTS 2-3
## (Money Laundering)
## (18 U.S.C. § 1957)

26. Paragraphs 1 and 15 through 25 incorporated as though realleged herein. On or about June 11, 2018, in the District of Oregon and elsewhere, defendant **JAMIE MCGOWEN** did knowingly engage and attempt to engage in a monetary transaction by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, to wit the transfer of $200,000 from Salem Outsourcing Inc.'s Key Bank account in Oregon ending in 5414 to Al's Trailer Sales of Salem's Key Bank account in Oregon ending in 5208, such property having been derived from a specified unlawful activity, that is the wire fraud scheme alleged in Count 1 of this Indictment.

27. Paragraphs 1 and 15 through 25 incorporated as though realleged herein. On or about August 7, 2018, in the District of Oregon and elsewhere, defendant **JAMIE MCGOWEN** did knowingly engage and attempt to engage in a monetary transaction by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, to wit the transfer of $79,000 from Salem Outsourcing Inc.'s Key Bank account in Oregon ending in 5414 to Sutherlin RV's Umpqua Bank account in Oregon ending in 4332, such property having been derived from a specified unlawful activity, that is the wire fraud scheme alleged in Count 1 of this Indictment.

All in violation of Title 18, United States Code, Section 1957.

## COUNT 4
## (Wire Fraud)
## (18 U.S.C. § 1343)

28. The allegations in paragraphs 2 through 14 of this Indictment are incorporated as though realleged herein.

**THE SCHEME**

29. From not later than April 3, 2020 and continuing through at least May 26, 2021, defendant **MCGOWEN** devised and intended to devise a material scheme to defraud the SBA and various financial institutions and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

30. Specifically, **MCGOWEN** applied for and obtained PPP, EIDL, and RRF loans and grants, using materially false information with the intent to steal and to convert the proceeds of those loans to her personal use and without any intent to use the proceeds thereof for any authorized purpose.

**MANNER AND MEANS**

It was part of this scheme that:

**PPP APPLICATION – AL'S TRAILER**

31. **MCGOWEN** applied for one PPP loan on behalf of Al's Trailer.

32. Between on or about April 11, 2019, and January 13, 2020, the IRS received four 2019 IRS Form 941s on behalf of Al's Trailer that reported the following information:

| Date Submitted | Period Covered 2019 | No. of Employees | Wages, Tips, or other Compensation | Federal Income Tax Withheld | Total Taxes After Adjustments |
|---|---|---|---|---|---|
| 04/11/2019 | Jan.-Mar. | 49 | $319,054.41 | $27,913.10 | $76,728.38 |
| 07/12/2019 | Apr-June | 58 | $587,085.37 | $59,441.05 | $149,265.13 |
| 10/11/2019 | July-Sept. | 58 | $585,039.89 | $62,805.11 | $152,316.37 |
| 01/13/2020 | Oct.-Dec. | 4 | $6,694.17 | $601.40 | $1,625.60 |

33. On or about January 15, 2020, on behalf of Al's Trailer, the IRS received IRS Form 940 for 2019 reporting yearly wages, tips, and other compensation totaling $1,616,616.61.

34. On or about April 3, 2020, **MCGOWEN** submitted PPP application number 15988848 to Bank of America (PPP – AL'S TRAILER). In PPP – AL'S TRAILER,

**Indictment**                                                                                       **Page 7**

MCGOWEN indicated that she was Al's Trailer's 100% owner. She falsely reported that Al's Trailer had an average monthly payroll of $183,750 and employed 70 people. **MCGOWEN** answered "No" to the following question: "Is the Applicant or any owner of the business an owner of any other business, or have common management with, any other business?" **MCGOWEN** knew that answer to be false. **MCGOWEN** certified that she was "not engaged in any activity that is illegal under federal, state or local law." **MCGOWEN** knew that certification to be false.

35.    In support of PPP – AL'S TRAILER, **MCGOWEN** submitted four false 2019 IRS Form 941s, all of which differ than those submitted to the IRS and described in paragraph 32:

| Period Covered 2019 | No. of Employees | Wages, Tips, or other Compensation | Federal Income Tax Withheld | Total Taxes After Adjustments |
|---|---|---|---|---|
| Jan.-Mar. | 44 | $463,051 | $44,667 | $114,767 |
| Apr-June | 56 | $661,502 | $63,810 | $163,952 |
| July-Sept. | 58 | $702,602 | $68,064 | $174,994 |
| Oct.-Dec. | 41 | $370,897 | $36,159 | $91,505 |

36.    In support of PPP – AL'S TRAILER, **MCGOWEN** submitted a false 2019 W-3, Transmittal of Wages and Tax Statements, reporting wages, tips, and other compensation totaling $2,205,005.55 with federal income tax withheld as $212,700.13. This information is inconsistent with the information reported in Al Trailer's 2019 IRS Form 940 described in paragraph 33.

37.    Based in part on the misrepresentations and false information provided in support of PPP – AL'S TRAILER, Bank of America approved and funded PPP loan number 62681277-01 in the amount of $454,532. This amount was funded to Al's Trailer's Bank of America bank account number XXXX1482 in Oregon.

38.	On June 25, 2020, the SBA paid Bank of America $13,636 in lender processing fees in connection with PPP – AL'S TRAILER.

## PPP – REALITY RV

39.	On or about April 30, 2020, the IRS received a 2020 IRS Form 941 paper return filed on behalf of Reality RV that reported between January and March 2020, Reality RV employed 0 people who received wages, tips or other compensation totaling $0.

40.	On or about July 8, 2020, **MCGOWEN** submitted PPP application number 21723838 to FC Marketplace LLC (dba Funding Circle) on behalf of Reality RV (PPP – REALITY RV). In PPP – REALITY RV, **MCGOWEN** indicated that she was Reality RV's 100% owner. She falsely reported that Reality RV had an average monthly payroll of $117,272 and employed 33 people. **MCGOWEN** answered "No" to the following question: Is the Applicant or any owner of the business an owner of any other business, or have common management with, any other business?". **MCGOWEN** knew that answer to be false. **MCGOWEN** certified that she was "not engaged in any activity that is illegal under federal, state or local law." **MCGOWEN** knew that certification to be false.

41.	Based in part on the misrepresentations and false information provided in support of PPP – REALITY RV, FC Marketplace LLC (dba Funding Circle) approved and funded PPP loan number 98284080-04 in the amount of $293,180. This amount was funded to Reality RV's JPMC bank account number XXXX0756 in Oregon.

42.	On July 27, 2020, the SBA paid $14,659 in lender fees in connection with PPP – REALITY RV.

/ / /

/ / /

**Indictment**                                                                                                           **Page 9**

## ADDITIONAL PPP APPLICATIONS

43.     Between April 14, 2020, and February 10, 2021, **MCGOWEN** submitted at least seven additional PPP applications, each of which contained materially false information:

| Date Submitted | Application Number | Entity | Funded Amount |
|---|---|---|---|
| 04/14/2020 | 13500934 | Klamath Falls Parts and Service Inc. | $50,100 |
| 04/14/2020 | 13526200 | Klamath Falls RV Inc. | $52,800 |
| 05/06/2020 | 17338786 | Valley Business & Tax Services Inc. | $45,317 |
| 05/19/2020 | 18135895 | Sutherlin RV Inc. | $106,983 |
| 01/19/2021 | 24533528 | Klamath Falls Parts and Service Inc. | $50,175 |
| 01/19/2021 | 25078524 | Klamath Falls RV Inc. | $52,885 |
| 02/10/2021 | 25292714 | Valley Business & Tax Services Inc. | $45,317 |

44.     Between April 3, 2020, and February 10, 2021, **MCGOWEN** fraudulently obtained PPP loans totaling approximately $1,151,289. For these nine PPP loans, the SBA paid lending fees of approximately $48,708.

## EIDL APPLICATION

45.     On or about June 27, 2020, **MCGOWEN** applied for an EIDL and advance for Reality Auto Inc by submitting application number 3307022210 to the SBA from an Internet Protocol address in Independence, Oregon to the SBA server in West Des Moines, Iowa. **MCGOWEN** certified that she was "not engaged in any activity that is illegal under federal, state or local law." **MCGOWEN** knew that certification to be false. Based in part on the misrepresentations in the EIDL application, the SBA funded a $3,000 advance to Reality Auto Inc on or about June 29, 2020. This amount was transferred via wire from Virginia to Reality Auto Inc.'s JPMC bank account number XXXX8755 in Oregon. The SBA subsequently denied the EIDL application.

///

### RRF APPLICATION

46.　On or about May 11, 2021, **MCGOWEN** applied for a RRF loan for Valley Investment Company/Casey's by submitting application number 31232251. **MCGOWEN** answered "No" to the following question: Is the Applicant or any owner of the business an owner of any other business, or have common management with, any other business?". **MCGOWEN** knew that answer to be false. **MCGOWEN** certified that she was "not engaged in any activity that is illegal under federal, state or local law." **MCGOWEN** knew that certification to be false. Based in part on the misrepresentations in the RRF application, the SBA funded $143,675 to Valley Investment Company/Casey's on or about May 26, 2021. This amount was transferred to Valley Investment Company/Casey's JMPC bank account number XXXX8897.

### WIRE FRAUD

47.　On or about the dates June 27, 2020, in the District of Oregon and elsewhere, defendant **JAMIE MCGOWEN**, for purposes of attempting to execute and executing the above-described material scheme to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowingly caused communications via interstate wire by submitting EIDL application number 3307022210 to the SBA from Oregon to Iowa.

All in violation of Title 18, United States Code, Section 1343.

### COUNTS 5-6
### (Bank Fraud)
### (18 U.S.C. § 1344)

48.　Paragraphs 2 through 14 and 28 through 44 of this Indictment are incorporated as though realleged herein.

**THE SCHEME**

49.   From not later than April 3, 2020, and continuing through February 10, 2021, defendant **MCGOWEN** devised and intended to devise a material scheme to obtain funds under the custody or control of various financial institutions by means of materially false and fraudulent pretenses and representations.

50.   Specifically, **MCGOWEN** applied for and obtained PPP loans totaling at least $1,151,289 by making materially false representations, including those about businesses' average monthly payrolls and employees, that **MCGOWEN**, as owner of the businesses was not the owner of any other business and that **MCGOWEN** was not engaged in any illegal activity.

## BANK FRAUD
## COUNT 5

51.   On or about April 3, 2020, in the District of Oregon and elsewhere, defendant **JAMIE MCGOWEN**, did execute said scheme or artifice to obtain funds under the custody of Bank of America, a federally insured financial institution, by means of materially fraudulent pretenses and representations, in that defendant applied for and obtained a PPP loan of $454,532 from Bank of America while knowingly and willfully misrepresenting Al's Trailer's average monthly payroll and number of employees, knowingly and willfully misrepresenting that **MCGOWEN**, as owner of Al's Trailer, was not the owner of any other businesses. On or about May 4, 2020, Al's Trailer's Bank of America account XXXXXXXX1482, located in Salem, Oregon, received the PPP loan.

## COUNT 6

52.   On or about July 8, 2020, in the District of Oregon and elsewhere, defendant **JAMIE MCGOWEN**, did execute said scheme or artifice to obtain funds under the custody of FC Marketplace LLC (dba Funding Circle), a federally insured financial institution, by means of

materially fraudulent pretenses and representations, in that defendant applied for and obtained a PPP loan of $293,180 from FC Marketplace LLC (dba Funding Circle) while knowingly and willfully misrepresenting Reality RV's average monthly payroll and number of employees, knowingly and willfully misrepresenting that **MCGOWEN**, as owner of Reality RV, was not the owner of any other businesses. On or about July 13, 2020, Reality RV's JPMC bank account XXXX0756, located in Salem, Oregon, received the PPP loan.

All in violation of Title 18, United States Code, Section 1344(2).

## COUNT 7
### (Money Laundering)
### (18 U.S.C. § 1957)

53.    Paragraphs 2 through 14 and 51 of this Indictment are incorporated as though realleged herein.

54.    On or about May 13, 2020, in the District of Oregon and elsewhere, defendant **JAMIE MCGOWEN** did knowingly engage and attempt to engage in a monetary transaction by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, to wit a check in the amount of $21,000, comprising the proceeds of PPP application number 15988848, from Bank of America account number XXXXXXXX1482, in the name of Al's Trailer Sales of Salem, Inc, to Lakeside Investment Group, such property having been derived from a specified unlawful activity, that is, bank fraud as alleged in Count 5 of this Indictment.

All in violation of Title 18, United States Code, Section 1957.

### FIRST FORFEITURE ALLEGATION

55.    Upon conviction of either wire fraud offense alleged in Counts 1 and 4 of this Indictment or conviction of the bank fraud offense alleged in Counts 5 and 6 hereof, defendant

shall forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) any property, real or personal, which constitutes or is derived from proceeds traceable to the offense, including but not limited to a money judgment for a sum of money equal to the amount of property involved in or derived from that offense.

56.　　If the above-described forfeitable property, as a result of any act or omission of defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

## SECOND FORFEITURE ALLEGATION

57.　　Upon conviction of the money laundering offense alleged in Counts 2, 3, and 7 of this Indictment, defendant shall forfeit to the United States pursuant to 18 U.S.C. § 982(a)(1) any and all property, real or personal, involved in or derived from said offense and all property traceable to such property, including but not limited to a money judgment for a sum of money equal to the amount of property involved in or derived from that offense.

58.　　If the above-described forfeitable property, as a result of any act or omission of defendant:

///

**Indictment**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**Page 14**

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third party;

    (c)    has been placed beyond the jurisdiction of the court;

    (d)    has been substantially diminished in value; or

    (e)    has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b).

## THIRD FORFEITURE ALLEGATION

59.    Upon conviction of the offenses alleged in Counts 5 or 6 of this Indictment, defendant shall forfeit to the United States pursuant to 18 U.S.C. § 982(a)(2) any property constituting or derived from proceeds obtained directly or indirectly as the result of such violation, including but not limited to a money judgment for a sum of money equal to the amount of property involved in or derived from that offense.

60.    If the above-described forfeitable property, as a result of any act or omission of defendant:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third party;

    (c)    has been placed beyond the jurisdiction of the court;

    (d)    has been substantially diminished in value; or

    (e)    has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b).

Dated: October 12, 2022

A TRUE BILL.

███████████████████
OFFICIATING FOREPERSON

Presented by:

NATALIE K. WIGHT
United States Attorney

_/s/ signature_

MEREDITH D.M. BATEMAN, OSB #192273
Assistant United States Attorney