WILLIAM M. NARUS, CAB #243633
Acting United States Attorney
District of Oregon
**MEREDITH D.M. BATEMAN, OSB #192273**
Assistant United States Attorney
Meredith.Bateman@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | 3:22-cr-00360-AN |
| v. | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **JAMIE MCGOWEN,** | |
| Defendant. | |

**I.   Introduction**

Over five years, defendant Jamie McGowen engaged in two separate fraud schemes to steal over $2,000,000. Between August 2016 and December 2018, she worked as a payroll processor for Al's Trailer Sales of Salem, Inc ("Al's"). Although defendant withheld $705,613 in taxes from Al's employees' salaries, she never filed the required tax forms with the Internal Revenue Service, and she kept all the money for herself. Just months after she "blackmailed" Al's owner into selling the business to her (using some of her ill-gotten gains), defendant found another opportunity to steal – this time from the federal government at the deprivation of struggling businesses. Over about 18 months, defendant submitted 15 fraudulent applications to steal from the Economic Injury Disaster Loan ("EIDL") program and the Paycheck Protection

**Government's Sentencing Memorandum**                                                                 Page 1

Program ("PPP"), made off with almost $1.3 million, and then submitted five forgiveness applications to make sure she would never have to pay the money back.

Defendant should be sentenced to 37 months in prison to hold her accountable for her conduct.

## II.     Procedural Posture

On October 12, 2022, the grand jury charged defendant via indictment with two counts of wire fraud in violation of 18 U.S.C. § 1343 (Counts 1 and 4), three counts of money laundering in violation of 18 U.S.C. § 1957 (Counts 2, 3, and 7), and two counts of bank fraud in violation of 18 U.S.C. 1344 (Counts 5 and 6).  On December 11, 2024, pursuant to a plea agreement, defendant pleaded guilty to wire fraud (Count 1), bank fraud (Count 5), and money laundering (Counts 3 and 7) and admitted the forfeiture allegations.  ECF No. 42.

## III.    Factual Background

Defendant was the owner or partial owner of nine companies: (1) Salem Outsourcing, Inc. ("SOI"), a human resources and payroll processing company (100% owner); (2) Reality RV and Trailers, Inc ("Reality RV") (100% owner), an RV and trailer dealer; (3) Klamath Falls RV, Inc. ("Klamath Falls RV") (100% owner), an RV dealer; (4) Klamath Falls Parts and Service ("Klamath Falls Parts") (100% owner), the service and repair side to Klamath Falls RV; (5) Sutherlin RV, Inc. ("Sutherlin") (100% owner), an RV and trailer dealer; (5) Al's (100% owner as of November 2019), a trailer dealership; (6) Reality Auto Inc ("Reality Auto"), a used car dealership (50% owner); (7) Valley Investment Company d/b/a Casey's Restaurant Inc. ("Valley Investment") (50% owner), a restaurant; (8) Valley Business and Tax Services, Inc. ("Valley

Business") (100% owner), an accounting firm; and (9) Valley Accounting and Tax d/b/a Valley HR Services ("Valley Accounting") (100% owner), an accounting and tax preparation business.[1]

### A. Defendant failed to pay over $705,613 in federal income withholding and payroll taxes.

Between August 2016 and December 2018, Al's paid defendant (through SOI) $3,000 a month to calculate and process Al's payroll and handle its payroll taxes.[2] Defendant withheld payroll taxes from Al's employees' salaries and paid employees either by checks from SOI's bank account or interstate wire transfer from SOI's bank account through Intuit Payroll. Defendant was the sole signor on SOI's bank accounts.

Defendant did not file Al's Forms 941 for the 9 quarters beginning September 2016 through December 2018, and never paid the $705,613 in tax she withheld from Al's employees' salaries. Instead, she kept this money for herself to spend on whatever she wanted, including $200,000 to buy 100% ownership interest in Al's, writing $150,000 and $79,000 checks to Sutherlin RV (which she owned)[3], wrote herself a check for $32,000, and wrote two checks totaling over $53,000 in the same week to two Kia dealerships.

---

[1] SOI, Reality RV, Klamath Falls RV, Klamath Falls Parts, Sutherlin, Al's, and Reality Auto were based in Oregon, and were administratively dissolved between March 2020 and March 2024. Valley Investment is in California. Valley Business and Valley Accounting are in Nevada.

[2] The Federal Insurance Contributions Act ("FICA") requires employers to withhold Social Security and Medicare taxes from wages and salaries paid to employees. Social Security and Medicare taxes are imposed on both the employee and the employer at a rate of 6.2% for social security and 1.45% for Medicare, creating a combined FICA tax rate of 15.3% (12.4% for Social Security and 2.9% for Medicare). A business uses IRS Form 941, Employer's Quarterly Federal Tax Returns, for reporting and paying these taxes to the United States government.

[3] Defendant wrote the checks to Sutherlin on August 17, 2017 and August 7, 2018. On September 6, 2018 Sutherlin was administratively dissolved but defendant reinstated it a week later, and it was again administratively dissolved in September 2020.

**Government's Sentencing Memorandum**                                                                             **Page 3**

In November 2019, when buying Al's, defendant and her father, a certified public accountant, leveraged the unpaid taxes to pressure Al's owner to selling to them at a discount. The owner described this to law enforcement as "blackmail" and that he "had to" sell Al's to defendant and her father because the owner could not tell an outside buyer there were no issues. Defendant acknowledged her conduct in an indemnification agreement to the seller as part of the purchase:

> WHEREAS, Salem Outsourcing Inc. employed Jamie McGowen to administer the preparation of payroll checks and journals, collect monies from Al's Trailers for payroll and payroll taxes, pay payroll taxes to the IRS and State of , and prepare quarterly payroll tax returns and annual W-2's.;
>
> WHEREAS, Salem Outsourcing Inc. did not pay or timely file tax returns associated with withholding taxes due as a result of labor employed by Salem Outsourcing Inc. and leased to Al's Trailers; and
>
> WHEREAS, Jamie McGowen and Gerald Killeen desire to purchase the outstanding stock of Al's Trailers and assume all of its liabilities including its potential tax liabilities;

### B. Defendant lied on 15 COVID-19 benefits applications to try to steal $2.8 million.

Stealing over $700,000 wasn't enough for defendant. Just nine days after Congress passed the CARES Act, defendant began submitting fraudulent applications to steal COVID-19 benefits meant for struggling businesses. Between April 3, 2020 and December 30, 2021, defendant submitted 15 fraudulent EIDL and PPP applications—often multiple on the same day or just weeks apart—on behalf of 15 different named entities, some of which shared the same employer identification number,[4] and then submitted forgiveness applications for many of the loans. On these applications, defendant lied about things like the number of employees the

---

[4] Specifically, on December 14, 2021, defendant applied for an EIDL for "Valley Accounting" (EIN 46-3186289). Two weeks later, on December 30, 2021, defendant applied for another EIDL under that EIN but changed the name of the business to "Valley Accounting and Tax d/b/a Valley HR Services." In September 2022, "Valley HR Services" was registered with the Nevada Secretary of State.

**Government's Sentencing Memorandum**                                                                 **Page 4**

companies had, their gross revenues, or their average monthly payroll because the larger these numbers were, the larger the loan defendant could get. And despite having 50%-100% ownership of numerous companies, on every application she claimed no ownership or management in any other business, which prevented the Small Business Administration ("SBA") from correctly determining business affiliations to correctly count the number of employees and ensure eligibility. To lend credibility to the applications, defendant knowingly submitted bogus tax documents (which she told agents her father prepared) that inflated the numbers compared to what was actually filed with the IRS. By way of just one example, the chart below details the October-December 2019 IRS Form 941 for Al's that was filed with the IRS compared to what defendant submitted to the SBA in support of her PPP application.

| Submitted To | # of Employees | Wages, Tips, or Other Compensation | Federal Income Tax Withheld | Total Taxes After Adjustments |
|---|---|---|---|---|
| IRS | 4 | $6,694.17 | $601.40 | $1,625.60 |
| SBA | 41 | $370,987 | $36,159 | $91,505 |

As shown in the chart below, defendant managed to get $1,297,964 of the $2,887,864 she tried to steal and caused a loss to the SBA of $1,367,247 including interest and SBA-paid lender fees.

| Date | Applicant Entity | Program and Application Number | Loan or Intended Loan (noted in Italics) |
|---|---|---|---|
| April 3, 2020 | Al's Trailer | PPP #15988848 | $454,532 |
| April 14, 2020 | Klamath Falls Parts and Service Inc | PPP #13500934 | $50,100 |
| April 14, 2020 | Klamath Falls RV Inc. | PPP #13526200 | $52,800 |
| April 30, 2020 | Reality RV | PPP #21723838 | $293,180 |
| May 6, 2020 | Valley Business & Tax Services Inc. | PPP #17338786 | $45,317 |
| May 19, 2020 | Sutherlin RV Inc. | PPP #18135895 | $106,983 |
| June 27, 2020 | Reality Auto | EIDL #3307022210 | $3,000 |
| October 2, 2020 | Klamath RV Inc. | EIDL #3314832770 | declined ($877,000) |

| October 2, 2020 | Klamath Falls Parts and Services | EIDL #3314832648 | declined ($40,700) |
|---|---|---|---|
| January 19, 2021 | Klamath Falls Parts and Service Inc. | PPP #24533528 | $50,175 |
| January 19, 2021 | Klamath Falls RV Inc. | PPP #25078524 | $52,885 |
| February 10, 2021 | Valley Business & Tax Services Inc. | PPP #25292714 | $45,317 |
| May 11, 2021 | Valley Investment Company/Casey's | RRF #31232251 | $143,675 |
| December 14, 2021 | Valley Accounting | EIDL #3325694678 | declined ($347,100) |
| December 30, 2021 | Valley Accounting and Tax d/b/a Valley HR Services | EIDL #3326083997 | declined ($325,100) |

Rather than spend the money according to the rules of the PPP and EIDL programs, defendant transferred most money amongst her various businesses, to her father, to her personal checking account, and paid off credit cards. By way of just a few examples, after defendant had the $106,983 Sutherlin RV PPP loan deposited to one of Reality RV's accounts (instead of Sutherlin's), she transferred $20,000 to a different Reality RV account which she then used to pay an owner of a construction company. She also transferred about $76,000 of the loan to Sutherlin RV's account in order to pay off $25,000 of credit card debt, write a $11,403.48 check to herself, and pay Kabbage Inc. $16,000. Similarly, after receiving the PPPs for Klamath Falls Parts and Services and Klamath Falls RV Inc., defendant transferred the entirety of both loans to one of Reality RV's account, waited a week, then transferred all the money to Valley Investment Company's account where she then used it to pay off credit cards and transfer it to her personal checking account.

To ensure she would not have to pay the government back for the PPPs, she submitted forgiveness applications for five of the seven[5] PPP loans claiming she spent all the loans on payroll.

## IV. The Presentence Report

On April 14, 2025, Probation disclosed its final PSR to the parties and issued its Sentencing Recommendation.

### A. Defendant's Total Offense Level is a 23.

In the PSR, Probation concluded that defendant's total offense level is a 23, calculated as follows:

| Description | No. | Guideline Section |
| --- | --- | --- |
| Base Offense Level | 7 | USSG §2S1.1(a)(1)(A), (B), §2B1.1(a)(1) |
| Loss of $2,072,860 | +16 | USSG §2B1.1(b)(1)(I) |
| Sophisticated Means | +2 | USSG §2B1.1(b)(10)(C) |
| More than $1,000,000 in gross receipts from a financial institution | +2 | USSG §2B1.1(b)(17)(A) |
| Conviction under 18 U.S.C. §1957 | +1 | USSG §2S1.1(b)(2)(A) |
| **Adjusted Offense Level** | **28** | |
| Zero-Point Offender | -2 | USSG §4C1.1(a), (b) |
| Acceptance of Responsibility | -3 | USSG §3E1.1(a), (b) |
| **Total Offense Level** | **23** | |

PSR ¶¶ 47-59.  In addition, Probation found that Counts 1 and 3, and Counts 5 and 7, are grouped for purposes of the Guideline calculation.  *Id.* ¶¶ 44-46.

### B. Defendant is in Criminal History Category 1.

The PSR concluded that defendant is in Criminal History Category 1 because defendant has a total criminal history score of zero.  *Id.* ¶ 63.

---

[5] Defendant did not submit forgiveness applications for the PPPs for Al's or Reality RV.

### C. Probation Recommended a Sentence of 41 Months' Imprisonment.

With a total offense level of 23 and a criminal history category of 1, Probation determined that defendant falls within an advisory Guidelines range of 46-57 months' imprisonment. *Id.* ¶ 87. In its Recommendation Letter, Probation recommended a term of 41 months' imprisonment.

## V. The United States' Position on the Presentence Report

The government has no objections to the PSR. There are three outstanding PSR issues for the Court: (1) grouping of counts (no objections by the parties); (2) application of sophisticated means (defense objects to application); and (3) whether defendant is eligible for probation (defense objects to language).

### A. Grouping

While the parties agreed that Counts 1 and 3 grouped and that Counts 5 and 7 grouped, the PSR grouped all counts together because (1) "one of the counts in each group embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts; and (2) "the offense level is determined largely on the basis of the total amount of harm or loss[.]" *Id.* ¶¶ 45-46. The parties conferred ahead of filing this memorandum and, upon review, agree the parties made a mistake in the plea agreement and believe the PSR is correct. Accordingly, all counts are grouped and depending on the Court's determination regarding sophisticated means, the final offense level is either 21 (37-46 months) or 23 (46-57 months).

### B. Sophisticated Means

The government and the Probation Officer recommend a two-level enhancement for sophisticated means under USSG § 2B1.1(b)(10)(C) for Count 5 (the bank fraud relating to the

COVID-19 scheme). PSR ¶ 49. Defendant's objection letter to the draft PSR objects to this enhancement but does not provide its reasoning. The government anticipates that defendant will claim this enhancement does not apply because defendant did not fill out the fraudulent tax form (she told agents her father completed the forms).[6]

Section 2B1.1(b)(10)(C) provides for a two-level enhancement if "the offense . . . involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means." The Guidelines define "sophisticated means" as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." *Id.* cmt. n.9. Ninth Circuit law is clear that "[c]onduct need not involve highly complex schemes or exhibit exceptional brilliance to justify a sophisticated means enhancement." *United States v. Jennings*, 711 F.3d 1144, 1145 (9th Cir. 2013). Judges in this district uniformly apply this enhancement in COVID-19 fraud cases where the defendant created or submitted bogus tax documents to support the inflated numbers on the applications. *See, e.g.*, *United States v. Mandera*, 3:23-cr-00307-MO (court imposed the enhancement when identified in the PSR even though government did not recommend it under the plea agreement); *United States v. Blood*, 3:21-cr-00231-IM; *United States v. Lysne*, 3:21-cr-00167-SI; *United States v. Kirkpatrick*, 3:22-cr-00388-001-IM; *United States v. Cunningham*, 3:22-cr-00018-IM; *United States v. Williams*, 3:22-cr-00034-AN. The government is not aware of a single COVID-19 fraud case in this district where the court did not apply the enhancement when identified in the PSR as applicable.

---

[6] The government will address any other arguments defense raises in its sentencing memo on this enhancement at sentencing.

**Government's Sentencing Memorandum** **Page 9**

Moreover, Ninth Circuit law and the guidelines are clear that this enhancement applies whether or not defendant was the one filling out the forms. *See* USSG Amendment 592 (the amendment applies when "the defendant intentionally engaged in or caused conduct constituting sophisticated means" and the enhancement is based on "defendant's own intentional conduct."); *United States v. Terabelian*, 105 F.4th 1207, 1220 (9th Cir. 2024) (applying sophisticated means when defendant "might not have been the mastermind" but "knew what was going on . . . [,] knew this was an extensive fraud[,] and . . . she knew the methodology" of co-conspirators using fictitious entities to steal almost $18 million in COVID-19 funds); *see also Cunningham*, 3:22-cr-00018-IM (court applied sophisticated means when defendant submitted fake tax documents created by a friend).

Here, defendant submitted at least 7 fabricated documents to support the gross revenues, numbers of employees, and other lies on her applications:

1. IRS Form 941 January – March 2019 for Al's
2. IRS Form 941 April – June 2019 for Al's
3. IRS Form 941 July – September 2019 for Al's
4. IRS Form 941 October – December 2019 for Al's
5. 2019 W-3 Transmittal of Wage and Tax Statements for Al's
6. 2018 IRS Form 1120, U.S. Income Tax Return for an S Corporation for Al's
7. IRS Form 941 January – March 2020 for Reality RV

In her plea agreement, defendant admitted that she submitted a fake IRS form that was never filed with the IRS and was created to get the PPP application for Al's. ECF No. 42, ¶ 6(L). During her post-arrest interview with law enforcement, she also admitted that she knew she was submitting incorrect tax documents with the applications and she "knew that it would come back on me" but did it because of "stupidity, but it was also out of desperation because I desperately wanted these businesses to work." Accordingly, this enhancement applies and would result in an offense level of **23 (46-57 months at Criminal History Category I).**

**Government's Sentencing Memorandum**                                                                 **Page 10**

### C. Eligibility for Probation

Defendant objects to the PSR's characterization that she is ineligible for probation. Defendant asserts that because the Court could sentence her to a non-custodial sentence on Count 5 (bank fraud), she could be eligible for probation under 18 U.S.C. § 3561(a) for Counts 1, 3, and 7 (which charge wire fraud and two counts of money laundering, respectively).

USSG § 5B1.1(a) provides that probation is only authorized if defendant is in either Zone A or Zone B.[7] Defendant will be in Zone D of the guidelines whether or not the Court imposes the sophisticated-means adjustment. USSG § 5C1.1(f) states "[i]f the applicable guideline range is in Zone D of the Sentencing Table, the minimum term shall be satisfied by a term of imprisonment." USSG § 5B1.1(b) adopts the language of 18 U.S.C. § 3561(a), which excludes Class B felonies, like bank fraud, from probationary sentences and excludes Class C felonies, like wire fraud and money laundering, from probationary sentences if "defendant is sentenced at the same time to a term of imprisonment for the same or a different offense[.]"

Accordingly, the guidelines require imprisonment for a Zone D defendant and the statute prohibits probation for the wire fraud and money laundering if defendant is sentenced to imprisonment. The only way defendant could receive a probationary sentence on the wire fraud and money laundering counts is if the Court sentences defendant to one day on the bank fraud count and the Bureau of Prisons credits this time to the sentence.

---

[7] Comment 2 to that guideline further states "Where the applicable guideline range is in Zone C or D of the Sentencing Table (*i.e.*, the minimum term of imprisonment specified in the applicable guideline range is ten months or more), the guidelines do not authorize a sentence of probation."

**Government's Sentencing Memorandum**                                                                 **Page 11**

## VI. The United States' Recommended Sentence and Section 3553(a) Analysis

The United States respectfully recommends that the Court impose (1) a term of imprisonment of 37 months;[8] (2) a 3-year period of supervised release on counts 1, 3, and 7, and a 5-year period of supervised release on count 5; (3) a $100 special assessment on each count for a total of $400; (4) no fine; and (5) restitution of $2,072,860.  The United States believes this sentence appropriately balances the nature, circumstances, and seriousness of the offense, defendant's history and characteristics and the need to provide deterrence and promote respect for the law, among other sentencing factors.

### A. Nature, Circumstances, and Seriousness of the Offense

The PSR correctly describes the facts of defendant's criminal conduct.  What warrants great emphasis is the extensive nature of defendant's behavior and her willingness to re-engage in new criminal behavior the moment the pandemic hit.  Despite having stolen over $700,000 between August 2016 and December 2018 and using that money however she wanted, she did not stop.  Defendant started stealing COVID-19 benefits almost the moment those benefits became available.  She did it consistently on behalf of all her entities and, between all of her misrepresentations, she knowingly lied to the government dozens of times to steal benefits intended to help struggling businesses survive.  Applications being denied did not stop defendant – it fueled her to change patterns.  For instance, on October 2, 2020, she submitted two EIDLs on October 2, 2020 for "Klamath RV Inc" and "Klamath Falls Parts and Services" for over $900,000 that were declined by the SBA on October 6, 2020, because the "information

---

[8] This is the low-end of the range contemplated by the parties in the plea agreement should the Court apply sophisticated means.  The government recognizes the grouping error in the plea agreement that results in a low-end range of 46 month, but continues to recommend 37 months.

**Government's Sentencing Memorandum**                                                                                                  **Page 12**

[defendant] submitted does not indicate an economic injury[.]" Defendant waited a few months and switched gears to steal from a different loan program; on January 19, 2021, she submitted two PPPs for "Klamath Falls Parts and Service Inc." and "Klamath Falls RV Inc" and made out with over $100,000. This type of behavior warrants serious punishment.

### B. Defendant's History and Characteristics

According to the PSR, defendant described her childhood as "pretty standard' but noted that she endured trauma as a teenager. PSR ¶ 69. Defendant led a law-abiding life until the conduct that brings her before the Court now. She currently splits her time between California (where she lives with her husband and teenage son) and Nevada, where she owns Valley Accounting and Tax.

### C. Need to Provide Adequate Deterrence, Protect the Public, and Promote Respect for the Law

A sentence of 37 months in custody will serve to deter defendant, who still runs a tax preparation business, remains close with her CPA father (who, according to February 2023 Yelp review prepared taxes at defendant's business)[9], and has a restaurant with her mother (in California) from doing anything like this again.[10] It will also deter both payroll processing companies from scamming individuals who have entrusted them to comply with tax laws and

---

[9] https://www.yelp.com/biz/valley-accounting-and-tax-service-las-vegas-2 (last visited April 10, 2025)

[10] Because defendant still runs a tax preparation business, the government conferred with the PSR writer regarding what conditions the PSR recommends relating to that business. The government understands that two conditions are intended to address this situation and relate to the business, and the government agrees these are sufficient. First, Standard Condition 12 ("If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk."). Second, Special Condition 7 ("You must maintain proper debit, credit, and receipt ledgers for <u>all business transactions</u>. You must make provide [sic] these records to the probation officer as directed.") (emphasis added).

**Government's Sentencing Memorandum**                                                              **Page 13**

individuals applying for government benefits. General deterrence is especially important in white collar cases like this one because would-be offenders need to be put on notice that there are severe consequences for this type of criminal conduct. *See United States v. Heine*, 2018 U.S. Dist. LEXIS 99922, at *5–6 (D. Or. June 14, 2018) ("White collar crime is peculiarly amendable to general deterrence [because] white collar criminals, oftentimes, premeditate their crimes and engage in a cost-benefit analysis."); *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) ("Because economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence. Defendants in white collar crimes often calculate the financial gain and risk of loss, and white collar crime therefore can be affected and reduced with serious punishment.") (internal citation omitted); *United States v. Goffer*, 721 F.3d 113, 132 (2d Cir. 2013) (addressing the need for general deterrence for those who might otherwise feel that some white collar crimes are "game[s] worth playing").

The Court should send a message to any would-be fraudsters that theft will land them a significant prison sentence.

### D. Need to Avoid Unwarranted Sentencing Disparities

Section 3553(a)(6) requires a court to "avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct[.]" According to Probation, during the last five fiscal years, there were 165 defendants whose primary guideline was Section 2S1.1, with a total offense level of 23 and criminal history category of 1. PSR ¶ 106. For the 144 defendants who received a sentence of imprisonment, the average length of imprisonment imposed was 30 months and the median length of imprisonment was 33 months.

While the government did not locate any cases in which a defendant engaged in a dual withholding/money laundering scheme and a COVID-19 benefits/money laundering scheme, there is precedent for Courts to impose significant custodial sentences for both of those schemes individually.

### i. Withholding Schemes

Although defendant was not charged with willful failure to pay over tax in violation of 26 U.S.C. § 7202, the offense conduct is similar, so those cases provide a useful guidepost for sentencing disparities (recognizing that the guidelines under Section 2T1.6 for a violation of 26 U.S.C. § 7202 for defendant's conduct would have resulted in a total offense level of 15[11] instead of 17).

In *United States v. Eckland*, 3:21-cr-00197-HZ, Melodie Eckland, a bookkeeper for an adoption agency who was responsible for filing and paying employment taxes, engaged in a failure to pay and a separate wire fraud scheme over seven years that caused a loss of about $1.5 million total. The wire fraud scheme involved Eckland (a) directly stealing about $1,000,000 from the adoption agency's bank account and writing unauthorized checks to herself; and (b) applying for loans from lending agencies in the adoption agency's name without their authorization to cover the amounts she stole. Eckland also failed to pay almost $100,000 in employment taxes. The low end of the guideline range was 37 months and the Court sentenced Eckland to 30 months in prison on the fraud counts. Unlike defendant, the government

---

[11] The government expects the guidelines would have been calculated based on USSG § 2T1.6 and § 2T4.1(H) for an offense level 20, reduced to a 15 with acceptance and the zero-point offender adjustment.

**Government's Sentencing Memorandum**  Page 15

recommended a four-level downward variance for Eckland and Eckland was also sentenced to a consecutive 24 months for aggravated identity theft.

In *United States v. Fitch*, 3:20-cr-00016-SI, Jeffrey Fitch collected but failed to pay about $450,000 in unemployment taxes for his employees over three-and-a-half years and used most of the money for his and his daughter's personal expenses. Fitch's final guideline range was 18-24 months, but the government recommended 12 months because, unlike defendant, Fitch pled to an Information and paid his entire restitution prior to sentencing.

In *United States v. Williams*, 3:21-cr-00405-IM, for about two-and-a-half years, Rebekah Williams collected but failed to pay about $112,000[12] in employment taxes to expand her business, pay creditors, and pay her personal expenses. Unlike defendant, the government recommended a two-level downward variance. The low-end of the guidelines was 8 months, which the Court imposed.

In *United States v. Kohnle*, 3:23-cr-00234-IM, over six years, Robert Kohnle collected but failed to pay more than $22 million in employment taxes on behalf of his clients to prop up his failing business. Unlike defendant, the government recommended a two-level downward variance to account for Kohnle's pre-indictment resolution and his history and characteristics. The Court sentenced Kohnle to 27 months in prison, 3 months below the government's recommended 30-month low-end sentence.

---

[12] In the plea agreement, the parties stipulated to the approximate $112,000 for guidelines purposes but Williams' tax fraud conduct outside of the statute of limitations was closer to $725,000.

**Government's Sentencing Memorandum**                                                   **Page 16**

ii. **COVID-19 Fraud**

Since the pandemic, Portland judges have sentenced defendants who committed similar COVID-19 relief loan benefit schemes to sentences comparable to the sentence the government recommends for defendant.

In *United States v. Defrees*, 3:22-cr-00184-SI, Mike Defrees, still under supervision for a prior bankruptcy fraud conviction, submitted four fraudulent PPP and EIDL applications for legitimate businesses on which he lied about his criminal history and the intended use of the loan proceeds. Like defendant, Defrees stole just over $1.3 million. Unlike defendant, the government did not request a sophisticated means enhancement, and it recommended a three-level downward variance. The Court sentenced Defrees to 21 months in prison for his wire fraud, bank fraud, and money laundering convictions, which was the low end of the guidelines.

In *United States v. Nevis*, 3:22-cr-00183-IM, Alfred Nevis stole victims' identities to register straw companies and submit almost two dozen EIDL applications to steal about $1.2 million. Unlike defendant, at the time of sentencing the zero-point adjustment had not been adopted and the government recommended a two-level downward variance. Nevis received a sophisticated means enhancement for his misuse of personal identifying information. The Court sentenced Nevis to 30 months in prison for the wire fraud and money laundering and 24 months for aggravated identity theft, which was the low end of the guidelines.

In *United States v. Tifekchian*, 3:21-cr-00244-IM, Benjamin Tifekchian applied for three fraudulent COVID-19 loans for a hopeful start-up business by lying about his criminal history and inflating revenues and number of employees. Tifekchian stole over $900,000 and then spent the money on gambling, vacations, and personal expenses. Unlike defendant, Tifekchian would not have qualified for the zero-point offender adjustment, the government did not seek a

sophisticated means enhancement, and the government recommended a two-level downward variance. The Court sentenced him to 21 months in prison, which was the low end of the guidelines.

In *United States v. Unitan*, 3:21-cr-00053-BR, David Unitan stole victims' identities to apply for dozens of fraudulent EIDLs and PPPs, stole over $979,000, and then fled law enforcement post-arrest. Like defendant, Unitan received a sophisticated means enhancement and money laundering enhancement, but unlike defendant, he also received an enhancement for impeding the administration of justice for not appearing for his arraignment. After the recommended two-level downward variance, the Court sentenced him to 37 months in prison for the wire fraud and money laundering and 24 months for aggravated identity theft, which was the low end of the guidelines.

A sentence of 37 months in prison for defendant would be consistent with sentences recently imposed in the District of Oregon for similar conduct and would avoid unwarranted disparity.

## VII. Restitution and Forfeiture

Defendant agreed in her Plea Agreement that she would pay $2,072,860 ($705,613 to the IRS and $1,367,247 to the SBA) to be reduced by any amounts paid before sentencing. ECF No. 42, ¶ 16. As of the time of this memorandum, defendant has not made any payments.

Pursuant to Federal Rule of Criminal Procedure 32.2(b)(4), the Preliminary Order of Forfeiture (ECF No. 44) becomes final at sentencing, so the government requests it be included in the judgment.

## VIII. Conclusion

The Court should sentence defendant to: (1) a term of imprisonment of 37 months; (2) a 3-year period of supervised release on counts 1, 3, and 7, and a 5-year period of supervised release on count 5, with the terms recommended by Probation; (3) a $100 special assessment on each count for a total of $400; (4) no fine; and (5) restitution of $2,072,860.

Dated: April 23, 2025        Respectfully submitted,

WILLIAM M. NARUS
Acting United States Attorney

*/s/ Meredith D.M. Bateman*
MEREDITH D.M. BATEMAN, OSB #192273
Assistant United States Attorney