*s/ Damien Munsinger*
Damien Munsinger, Esq.
Or. Bar # 124022
damien@kleinmunsinger.com

Klein Munsinger LLC
1215 SE 8th Ave., Ste. F
Portland, OR 97214
503.568.1078

*s/ Katryna Lyn Spearman*
Katryna Lyn Spearman, Esq.
Ga. Bar # 616038
kspearman@lowtherwalker.com

*s/ Serguel Mawuko Akiti*
Serguel Mawuko Akiti, Esq.
D.C. Bar # 1631134
sakiti@lowtherwalker.com

Lowther | Walker LLC
101 Marietta St. NW, Ste. 3650
Atlanta, GA 30303
404.496.4052
www.lowtherwalker.com

Attorneys for Defendant
Jamie McGowen

Sentencing Memorandum                    1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　　　　Plaintiff,<br>　v.<br>JAMIE MCGOWEN,<br>　　　　　　　Defendant. | 3:22-CR-00360-AN-1<br><br>SENTENCING MEMORANDUM |

Ms. JAMIE MCGOWEN, pursuant to Fed. R. Crim. P. 32, respectfully submits the following position in support of a variant sentence.

I.  **Sentencing Guidelines**

　**A. Impact of Plea Agreement on Sentencing Guidelines Range**

Ms. McGowen entered into a negotiated plea agreement with the Government wherein the parties stipulated *many* enhancements and maintained opposing positions on applying the sophisticated means enhancement. Under the plea agreement, Ms. McGowen concurred that Counts 1 (wire fraud) and 3 (money laundering) are grouped, resulting in a Total Offense Level of 17. PSR ¶ 9. The parties further stipulated that Counts 5 (bank fraud) and 7 (money laundering) are grouped, resulting in a Total Offense Level of 19. PSR ¶ 10. Should the Court concur with the Government that sophisticated means applies, the Total Offense Level would increase to 21. The sentencing guidelines range on

these would be 30–37 months (level 19) or 37–46 months (level 21). The Government further binds itself to request a low-end sentence.

Probation applies USSG § 3D1.4 to the offense level calculation. Because the two groups are two offense levels apart, each is counted as one "unit." U.S.S.G. § 2D1.4(a). As a result, two offense levels are added to the higher of the two groups. The final offense calculation becomes level 21 without applying the sophisticated mean enhancement and level 23 with the enhancement.

Therefore, though Ms. McGowen understands that the stipulations are not binding on the Court and that the Court ultimately determines the calculation of the range, Ms. McGowen respectfully requests that her mental state regarding the guideline range be kept in mind for the duration of the forthcoming proceedings.

### B. Outstanding Objections

The Government believes that Ms. McGowen qualifies for the sophisticated means enhancement cause she herself did not physically alter documents. However, this is not the case. Ms. McGowen objects to the enhancement because falsifying documents is basic and inherent to an ordinary bank fraud case. There is nothing "especially complex or intricate" about it. U.S.S.G. § 2B1.1 n.9(B). Offenders without college educations, those without special computer applications, and those without technical knowledge have all engaged in similar behaviors throughout the pandemic loan applications.

Sentencing Memorandum                              3

Although the 9th Circuit has found this enhancement applicable to conduct less sophisticated than the list articulates in the application note (see *United States v. Jennings*, 711 F.3d 1144, 1147 (9th Cir. 2013)), courts have set limitations on state applications. For example, in 2001, the Circuit found that because smuggling necessarily involves concealment, sophisticated means requires more than what is necessary to commit the crime. *United States v. Montano*, 20 F.3d 709 (9th Cir. 2001). Similarly, Ms. McGowen simply would not have qualified for the loans had she not caused falsified documents to be filed; therefore, the commission of the crime could not have been completed without this action, so it is not sophisticated.

Furthermore, the Circuit stated that "the intent of this enhancement is to punish the more cunning and scheming defendants who employ complex and involved means so as to avoid or delay being found out. Thus, this enhancement should be reserved for those defendants who employ more complex or intricate means than those typically used in an ordinary [] fraud scheme." *United States v. Cooper*, Nos. 02-40069-01-SAC, 02-40069-02-SAC, 02-40069-3-SAC, 2006WL 28874 at *16 (D. Ks. Jan. 24, 2006). In undersigned counsel's experience, the vast majority of offenders in COVID-loan fraud cases generated falsified documents to support their fraudulent application. It is simply impractical to say that every person who commits PPP fraud has used sophisticated means when there is an obvious spectrum of offenders.

Sister circuits have concurred. The 4th Circuit stated, "the [sophisticated means] enhancement requires some means of excursion that separates the offense before us from the ordinary or generic." *United States v. Jinwright*, 683 F.3d 471, 486 (4th Cir, 2012). The 4th Circuit further found that the Government failed to establish that the defendant used sophisticated means, where the defendant used forged checks *and* a stolen identity to attempt to defraud a bank, because virtually all bank fraud involved misrepresentation, including the unauthorized acquisition and use of another's information. *United States v. Adepoju*, 756 F.3d, 257 (4th Cir. 2014). The Court in *Adepoju* further stated that "sophistication requires more than the concealment or complexities inherent in fraud. Thus, fraud *per se* is inadequate for demonstrating the complexity required for enhancement under [the Guidelines]." *Id.* Finally, the 7th Circuit found that the adjustment for sophisticated means is warranted only "when the conduct shows a greater level of planning or concealment than a typical fraud of its kind." *United States v. Green*, 648 F.3d 569, 576 (7th Cir. 2011).

Ms. McGowen submits that the means used in this case are standard amongst PPP and EIDL fraud cases and that she is no "more cunning and scheming" nor did she "employ more complex or intricate means than those typically used in an ordinary" loan fraud scheme. See *Cooper, supra.*

Ms. McGowen concurs that an error was made between the parties when calculating the anticipated guidelines in the plea agreement. She respectfully

Sentencing Memorandum                                5

requests that the Court consider that Ms. McGowen entered into a plea agreement in which she anticipated a sentence of 30-37 months,[1] depending on how the Court rules on the sophisticated means issue. Ms. McGowen prays that the Court grant her objection to the application of the sophisticated means enhancement and find that the Total Offense Level is 21.

## II. Statutory Options

Ms. McGowen pleaded guilty to one count of wire fraud in violation of 18 U.S.C. § 1343 (Count 1); one count of bank fraud in violation of 18 U.S.C. § 1344 (Count 5); and two counts of money laundering in violation of 18 U.S.C. § 1957 (Counts 3 & 7). Count 1 is a Class C felony with a maximum prison sentence of twenty years and a maximum fine of $250,000. Counts 3 and 7 are also Class C felonies with a maximum prison sentence of ten years and a maximum fine of $250,000. Count 5 is a Class B felony with a maximum prison sentence of thirty years and a maximum fine of $1,000,000. There is *no mandatory minimum* for any of Ms. McGowen's charges.

---

[1] At a Total Offense Level 19, the guideline range is 30-37 months; at Total Offense Level 21, it is 37-46 months. The Government bound itself to request the low end of the guidelines; therefore, Ms. McGowen anticipated a sentence of either 30 or 37 months. Should the Court use Probation's calculations, the low-end guidelines, depending on the ruling on sophisticated means, would shift to 37 or 46 months.

### III. 18 U.S.C. § 3553 Factors

#### A. Nature and Circumstances of the Offense and the History and Characteristics of Ms. McGowen.

##### 1. Nature and Circumstance of the Offense

Regarding Counts 5 and 7, Ms. McGowen respectfully submits that she operated several businesses at the start of the unprecedented pandemic. When the Payroll Protection Program was initiated, Ms. McGowen believed that there were a sufficient number of employees to qualify for a loan across her companies. She falsified documents to make it appear that those employees all worked for one company. She then applied for and was granted a loan for that company. She used these funds to purchase inventory for her other companies (such as an RV). Ms. McGowen understood that this was fraudulent behavior, but, in survival mode, she did not contemplate the gravity of her actions or the far-reaching impact of these actions at the time of commission.

Regarding Counts 1 and 3, she admits her conduct and is deeply remorseful for the harm her actions caused. Ms. McGowen is determined to make amends for her conduct and to make restitution payments on a reliable schedule.

##### 2. History and Characteristics of Ms. McGowen

Ms. McGowen struggles with her mental health. She has expressed suicidal ideations (PSR, ¶78), and has untreated trauma from when she was raped by a significantly older man at sixteen (PSR, ¶ 69).

On top of this, Ms. McGowen is currently in an emotionally and previously physically tumultuous marriage. Her husband is an alcoholic and has a history of being physically violent with Ms. McGowen. PSR, ¶¶ 70-1. Her relationship has contributed to her poor mental health and suicidal ideation. PSR, ¶78. Her family has expressed concern about Ms. McGowen remaining in her toxic relationship, but they are also afraid of what he will do to Ms. McGowen or their shared son if she leaves. PSR, ¶70.

The primary reason Ms. McGowen has not acted on her suicidal ideations is her love for her son, which keeps her going. PSR, ¶ 78. She grieves the fact that she has put stress on his life with the current offense and does not wish to cause him further pain. *Id.* Her son and husband have a tense relationship. Ms. McGowen is deeply concerned about leaving her son alone with her husband for an extended period while she serves a custodial sentence. PSR, ¶71.

    **B.**    **Protecting the Public from Ms. McGowen's Potential Future Criminal Conduct and Providing Adequate Deterrence to Criminal Conduct**

        **1.**    **Specific Deterrence**

Ms. McGowen is forty-three years old and has a criminal history score of zero. PSR, ¶63. As Probation calculates, Ms. McGowen's guideline range is, at the

low end, approximately four years in prison, so by the time she exits prison, she will be approximately forty-seven. PSR, ¶87. Age and criminal history, together, are strong predictors of recidivism.[2] Of the people between forty and forty-nine when released from custody in 2010, only 22% recidivated. *Id.*

Moreover, defendants sentenced initially on fraud charges had the lowest recidivism rates out of any offense category. *Id.* at 32. Also, of all federal offenders released in 2010, only 4% were re-arrested with fraud charges. *See Id.* at 23. Finally, Ms. McGowen has a college degree. Offenders released in 2010 who had college degrees only recidivated 19.6% of the time. *Id.* at 31. In sum, Ms. McGowen is in a demographic with some of the lowest recidivism rates. A below-guidelines sentence will suffice for specific deterrence because she is statistically unlikely to commit another crime. *Id.*

Next, a term of incarceration would damage Ms. McGowen's family structure. Studies have shown that children with incarcerated parents suffer emotionally, financially, and educationally.[3] That, combined with the above-referenced tense relationship between Ms. McGowen's son and her husband, means that any custodial sentence will sufficiently deter her from committing

---

[2] *See* Ryan Cotter, et al. *Recidivism of Federal Offenders Released in 2010.* U.S. Sent'g Comm'n (2021) at 30.
[3] Eric Martin, *Hidden Consequences: The Impact of Incarceration on Dependent Children*, 278 Nat'l. Inst. J. (2017).

Sentencing Memorandum                 9

another crime, because she will have to live with the knowledge that her actions caused her son's suffering.

Finally, extensive criminological research has shown that strong family support predicts desistance from crime for defendants upon release, alongside stable work, transformation of identity, and aging.[4] *See* Mowen, *et al.*, "Family Matters." Despite the instant proceedings, Ms. McGowen is fortunate to have parents and a sister who love and support her. PSR, ¶ 68. She has plans to leave her toxic relationship after she serves her custodial sentence to live close to her family instead. PSR, ¶ 73. Ms. McGowen's family support will reduce her chances of recidivism; a below-guidelines sentence will suffice for specific deterrence.

### 2. General Deterrence

Empirically, criminologists have shown that harsher sentences do not deter the public from committing crimes; instead, the certainty of getting caught has a more significant general deterrent effect. *See* Loeffler and Nagin, "The Impact of Incarceration on Recidivism." The fact that Ms. McGowen was arrested and convicted will be the most deterrent factor in this case to prospective

---

[4] *See* Thomas J. Mowen, *et al.*, *Family Matters: Moving Beyond "If" Family Support Matters to "Why" Family Support Matters during Reentry from Prison*, 56(4) J. of Rsch. In Crime and Delinq. 483; *see also* John H. Laub & Robert J. Sampson, Understanding Desistance from Crime, 28 Crime and Justice, 1 (2001).

criminals, not the length or severity of her sentence. *Id.* A sentence below the guidelines will suffice for general deterrence.

      **C.    Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment**

A sentence below the guidelines will suffice to reflect the seriousness of the offense, promote respect for the law, and provide just punishment.

First, there are severe socioeconomic consequences that stem from incarceration; on average, people who served time in prison experience a 52% decrease in subsequent annual earnings.[5] This means that Ms. McGowen will suffer *lifelong* financial consequences from any term of imprisonment. Additionally, Ms. McGowen will have to live knowing that her son will be forced to live without a mother for a significant time and miss important milestones in his life. These consequences of incarceration reach beyond the time when Ms. McGowen is released from custody. Thus, a below-guidelines sentence will suffice to reflect the seriousness of the offense and provide just punishment, primarily because Ms. McGowen is a non-violent first-time offender with a low likelihood of recidivism.

A below-guidelines sentence is also sufficient to promote respect for the law. Ms. McGowen has shown throughout her pretrial and presentence release

---

[5] *See* Terry-Ann Craigie, *et al.*, *Conviction, Imprisonment, and Lost Earnings How Involvement with the Criminal Justice System Deepens Inequality*, Brennan Center for Justice, N.Y.U. (2020).

Sentencing Memorandum                  11

periods that she can desist from crime, showing great respect for the law. She has complied enthusiastically with all of her release conditions. Additionally, Ms. McGowen, as soon as she learned of the proceedings against her, retained counsel and eagerly entered a plea agreement, saving the Government time and money on trial. She has exhibited these reformed behaviors even before she has served any meaningful time in custody. This is also Ms. McGowen's first offense and first interaction with the law. The shock of this being her first experience with incarceration will sufficiently instill a healthy fear of the law, regardless of the length of her sentence. As such, a below-guidelines sentence is also sufficient because Ms. McGowen has shown through her actions that she already respects the law.

### D. Substance Abuse and Mental Health Treatment or Vocational Training

Ms. McGowen respectfully requests a recommendation for mental health treatment while in custody so that she can move past her childhood trauma and process her feelings about her toxic marriage.

### E. Avoid Unwarranted Sentencing Disparities

The need to avoid unwarranted sentencing disparities is great, particularly when considering the number of offenders convicted of PPP loan fraud cases. Notably, the US Sentencing Commission provides valuable statistics.

Female offenders are relatively rare amongst federal cases — only 12.9% of all federal offenders in Fiscal Year 2023 were female.[6] Of these women, their average age was 38 (close to Ms. McGowen's age). *Id*. Comparatively, women receive lighter sentences than men; the average sentence issued to women was 32 months compared to 57 months for men (a 44% reduction). *Id*. Only 28% of women received a within guidelines sentence, 34.44% received a downward variance with an average reduction of 59.2%. *Id*. The remainder of the defendants received some downward departure under the guidelines. *Id*. Despite women facing a national average guideline minimum of 56 months, the average woman was sentenced to 32 months. *Id*. Clearly, it is not disparate to give women a below-guideline sentence.

Amongst fraud cases, the average age of offenders was 43 years old, again, fairly similar to Ms. McGowen.[7] *Only* 16.3% of defendants received the enhancement for sophisticated means. *Id*. Despite an average guideline minimum of 33 months, the average sentence imposed in Fiscal Year 2023 was 23 months. Overall, only 37.12% of offenders received a within guideline sentence. *Id*. Ms. McGowen's guideline minimum is roughly similar, so the same variance

---

[6] See "USSG – QuickFacts Federally Sentenced Women", https://www.ussc.gov/research/quick-facts/federally-sentenced-women, last accessed May 7, 2025.
[7] See USSG—"QuickFacts Theft, Property Destruction, and Fraud", https://www.ussc.gov/research/quick-facts/theft-property-destruction-fraud, last accessed May 7, 2025.

Sentencing Memorandum                     13

would not cause sentencing disparities. Additionally, a whopping 42.12% received a downward variance with an average reduction of 62.5%. *Id.*

The combination of data as it relates to fraud and female offenders shows that a below-guidelines sentence would not cause national disparities.

### F. Restitution and Victim Compensation

Ms. McGowen agrees to pay $2,072,860 in restitution. PSR, ¶ 100.

## IV. Letters in Support

Ms. McGowen respectfully submits fifteen letters in support. *See* Exhibit A. In these letters, this Court will see that the offense conduct is out of character for her.

## V. Request for Location

Should this Court issue a term of imprisonment, Ms. McGowen respectfully requests placement as close to her son as possible.

## VI. Conclusion

Ms. McGowen, based on the foregoing assertions and argument, prays that the Court consider a below-guideline sentence.

Date:	May 7, 2025

        Respectfully submitted,

        ***s/ Katryna Lyn Spearman***
        Katryna Lyn Spearman, Esq.

        ***s/ Serguel Mawuko Akiti***
        Serguel Mawuko Akiti, Esq.

        ***s/Damien Munsinger***
        Damien Munsinger, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that on May 7, 2025, I electronically filed the foregoing SENTENICNG MEMORANDUM with the Clerk of the United States District Court for the District of Oregon by way of the CM/ECF system, which automatically will generate a notice of electronic filing and serve this document on the attorneys of record for the parties in this case by electronic mail.

    Date:      May 7, 2025

Respectfully submitted,

*s/ Katryna Lyn Spearman*
Katryna Lyn Spearman, Esq.